E. KATHARINE TINTO | CA BAR #223654
CRIMINAL JUSTICE CLINIC, UC IRVINE SCHOOL OF LAW
401 E. PELTASON DRIVE, SUITE 3800-L
IRVINE, CA 92697
949.824.9247 | KTINTO@LAW.UCI.EDU

ERIC ROSENFELD | PA BAR #208106 | PRO HAC VICE PENDING
R&G LEGAL SOLUTIONS
3662 N 21ST STREET, PHILADELPHIA, PA 19140
215.779.6443 | ERIC@RGLEGALSOLUTIONS.COM

*Pro Bono Attorneys for Petitioner*

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION**

| | |
|---|---|
| MONICA RYADI,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, in his or her Official Capacity as the Operator/Warden of Adelanto ICE Processing Center;<br><br>GEO GROUP, in its Official Capacity as the Operator/Warden of Adelanto ICE Processing Center;<br><br>MARKWAYNE MULLIN, in his Official Capacity, Secretary of the U.S. Department of Homeland Security;<br><br>TODD BLANCHE, in his Official Capacity, Acting Attorney General of the United States;<br><br>THOMAS GILES, in his Official Capacity as Los Angeles Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement;<br><br>Respondents. | Case No. 5:26-cv-05501<br><br>No request for jury trial<br>No request for oral argument<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>**HABEAS IMMIGRATION CASE** |

**PETITION FOR WRIT OF HABEAS CORPUS**
**Pursuant to 28 U.S.C. §2241**

**Preliminary Statement and Relief Sought**

Petitioner Monica Ryadi ("Monica") seeks a Writ of Habeas Corpus directing her IMMEDIATE RELEASE from immigration detention. She is a 30-year-old Indonesian woman, a registered nurse, the wife of a United States Citizen, and the mother of a three-year-old United States Citizen son. Counsel reports that Monica entered the United States with her family on a visa as a child in 2005, timely sought asylum, and received Withholding of Removal in 2010. A Motion to Reopen was denied in 2024.

Monica reports that on September 15, 2026, ICE Agents arrested her at Los Angeles International Airport after the family arrived for a trip to Disneyland (the family flew from Philadelphia, where they reside). After exiting the plane, an ICE Agent approached Monica and told her they had a warrant for her arrest. He stated, "[You are] out of status. You are not allowed to be in the country illegally."

During the arrest, ICE Agents reportedly told Monica that she would be sent to a third country without identifying it. She has not been made aware of the statutory basis asserted for her present detention. Monica reports that she still has not been provided with any paperwork or informed of any specific reason for her detention as of September 20, 2026 at 4:30PM PT.

Petitioner requests IMMEDIATE RELEASE on the grounds counsel will specify below.

**CUSTODY AND PARTIES**

1. Petitioner is MONICA RYADI, a 30-year-old Indonesian woman. At filing, her place of detention is Adelanto ICE Processing Center at Adelanto East, 10400 Rancho Road, Adelanto, CA 92301.

2. Respondent WARDEN, in his or her Official Capacity as the Operator/Warden of Adelanto ICE Processing Center, is the immediate custodian of the Petitioner. The facts establishing this Respondent's immediate custody of Petitioner are based upon publicly available information and telephone conversations between Counsel and Petitioner.

3. Respondent GEO GROUP, in its Official Capacity as the Operator/Warden of Adelanto ICE Processing Center, is the immediate custodian of the Petitioner. The facts establishing this Respondent's immediate custody of Petitioner are based upon publicly available information and telephone conversations between Counsel and Petitioner.

4. Respondent MARKWAYNE MULLIN, in his Official Capacity, Secretary of the U.S. Department of Homeland Security.

5. Respondent TODD BLANCHE, in his Official Capacity, Attorney General of the United States

6. THOMAS GILES, in his Official Capacity as Los Angeles Office Director for Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement.

7. Petitioner's husband Steven Lucky Sary and minor child L.S. are identified as family members whose circumstances may bear on the requested relief. They are not Petitioners in this action.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction under 28 U.S.C. §2241(a) and (c)(3) over Petitioner's claims that her present physical confinement violates the Constitution and laws of the United States. Petitioner is in immigration custody within this District when this action is commenced. Counts I, II, III, V, and VI challenge the legal authority for, and constitutional and regulatory validity of, that confinement. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

9. Respondent WARDEN, in his or her official capacity, is Petitioner's immediate physical custodian at ICE Processing Center in Adelanto, California, and is located within this District. The custody claims are therefore brought against the immediate custodian in the district of confinement. *See Doe v. Garland,* 109 F.4th 1188 (9th Cir. 2024).

10. The Court also has federal-question jurisdiction under 28 U.S.C. §1331 over the constitutional and federal-law claims concerning Respondents' threatened application of third-country removal procedures to Petitioner. For the nonmonetary claims against the responsible federal officials, Petitioner invokes the waiver of sovereign immunity in 5 U.S.C. §702. Count IV identifies the challenged agency action and the grounds for review under 5 U.S.C. §§704 and 706. Petitioner does not contend that the APA overrides an otherwise applicable statutory restriction on judicial review.

11. Section 2243 authorizes the Court to require a return establishing the cause of Petitioner's custody and to determine the appropriate habeas remedy. Petitioner also seeks declaratory relief under 28 U.S.C. §§2201-2202 and appropriate preliminary and permanent equitable relief on independently reviewable claims. Neither the Declaratory Judgment Act, Federal

Rule of Civil Procedure 65, nor the All Writs Act is asserted as an independent grant of subject-matter jurisdiction.

12. Venue for the custody claims is proper in this District because Petitioner and her immediate custodian are located here. The Eastern Division is appropriate because Adelanto is in San Bernardino County. 28 U.S.C. §84(c)(1). Venue for the related non-habeas claims against federal officials is also proper under 28 U.S.C. §1391(e)(1)(B), because a substantial part of the events and omissions giving rise to those claims occurred or is occurring in this District.

13. Petitioner does not seek review or vacatur of the underlying 2010 removal order, reversal of the 2024 reopening decision, or district-court adjudication of the ultimate merits of a claim for withholding or protection under the Convention Against Torture. Count IV challenges the threatened application of later destination-specific procedures that would deny a meaningful opportunity to invoke applicable protection and review. The claim-specific restrictions in 8 U.S.C. §1252 and the basis for review notwithstanding those restrictions are addressed in Count IV.

## FACTUAL BACKGROUND

### A. Immigration history, family, and community life

14. Petitioner entered the United States lawfully with her family on visas in 2005, when she was about nine years old. She has lived in the United States for approximately twenty one years.

15. Within one year of the family's arrival, Petitioner's parents sought asylum for the family. Petitioner was a child throughout those proceedings and has limited personal recollection of their procedural details.

16. In approximately 2010, the Immigration Court denied asylum but granted her withholding of removal. She was fourteen or fifteen years old at the time.

17. Following those proceedings, Petitioner remained in the United States and built her adult life here. She paid for her own college education, first attending Community College of Philadelphia and later earning a Bachelor of Science in Nursing from Ohio University.

18. Petitioner is a licensed registered nurse employed at Riddle Hospital in Delaware County, Pennsylvania. She has worked as a nurse for nine years, including throughout the COVID-19 pandemic.

19. Petitioner married Steven Lucky Sary, a United States Citizen, on January 19, 2021. Their son, L.S., was born in 2023, and is a three-year-old United States Citizen. The family lived together in Philadelphia before Petitioner's arrest.

20. In 2022, United States Citizenship and Immigration Services approved Form I-130 filed by Petitioner's husband on her behalf.
21. Petitioner subsequently sought reopening and termination of the earlier immigration proceedings. An Immigration Judge denied that request in 2024. Petitioner then sought DHS's agreement to a joint motion to reopen and terminate. That request for DHS's agreement remains unanswered.
22. Before her September 2026 arrest, Petitioner had never been physically detained by immigration authorities and had never been placed on an Order of Supervision. This is her first physical immigration detention. She was not previously released from immigration detention on bond, parole, or an Order of Supervision.

**B. Arrest at Los Angeles International Airport**

23. Petitioner reports that, on or about September 15, 2026, she arrived at Los Angeles International Airport with her husband and son on a domestic flight from Philadelphia for a family trip to Disneyland. Four or five ICE officers approached her after exiting the plane. She recounts portions of the encounter as follows.
24. One officer told Petitioner that the officers had a warrant for her arrest. He told her that she was “out of status” and stated, “You are not allowed to be in the country illegally.”
25. Petitioner replied, “I'm not illegal. I pay my taxes. I'm a registered nurse. I pay my taxes.” The officer responded, “I don't care if you are the President of the United States or a Congresswoman like Ilhan Omar.”
26. Petitioner's husband asked the officer, "Can I see a law enforcement ID?" The officer threatened to arrest him and place their child in protective custody if he interfered, stating, "If you want to interfere, you'll be arrested and your child will go to CPS services." The officer also asked, "You want your child in protective services?"
27. Petitioner took out her phone and said, "I'm calling my lawyer." The officer then stated, "You're under arrest now. Let's go ahead and just cuff her. This could have been nice but you wanted to act like this, so that's fine."
28. Several officers led Petitioner down a hallway in handcuffs. Before they disappeared around a corner, she turned toward her husband and called out, "Call my lawyer, babe."
29. Just after the arrest, an officer told Petitioner that she would be sent to a third country. The officer did not identify that country.
30. The officers did not show Petitioner the warrant they said they possessed or give her a copy.

**C. Continuing detention and undisclosed custody and removal decisions**

31. Petitioner has remained continuously in immigration custody since her arrest.
32. As of Sunday, September 20, 2026 at 4:30PM PST, Petitioner reported that she still has not received paperwork from ICE concerning her arrest or detention.
33. Petitioner has not received a written custody determination identifying the statutory authority invoked for her continued confinement, the factual grounds for retaining her in custody, or the official who made the custody decision.
34. Neither Petitioner nor counsel have been informed that a particular third country has been selected for her removal. Petitioner has not received a written destination notice, removal itinerary, scheduled removal date, travel document, receiving-country communication, or other document identifying an intended third-country destination. She has not been told whether any country has agreed to receive her.
35. Petitioner reported that she has not been afforded an interview or other procedure concerning fear of removal to an identified third country. With no destination disclosed, she had not had an opportunity to evaluate conditions there or prepare information concerning a fear of direct or onward removal from that country.

**D. Consequences of detention and proposed return home**

36. Petitioner's detention abruptly separated her from her family and materially jeopardizes their wellbeing.
37. According to the information supplied to counsel, Petitioner's nursing position remains available to her at present if she is released.
38. Petitioner seeks to return to her existing family home in Philadelphia, where she lived with her husband and son before the arrest, and to resume her nursing employment. She is the owner of the family home.

## CLAIMS FOR RELIEF

### COUNT I
### Detention Exceeds the Authority Conferred by 8 U.S.C. §1231

39. Petitioner incorporates the facts regarding her detention status, immigration background, absence of prior physical custody, and September 15, 2026 arrest set forth above. She invokes 28 U.S.C. §2241(c)(3) because Respondents are holding her beyond statutory

boundaries. This challenge targets the lawfulness of physical custody rather than the underlying order.

40. Habeas jurisdiction reaches claims that physical confinement exceeds statutory parameters. *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001). The distinction between evaluating agency authority and reviewing discretionary determinations is paramount. Petitioner asks this Court to determine statutory boundaries rather than substitute its discretion for the agency's. Section 1231(h) does not extinguish habeas scrutiny over unauthorized confinement. *Id.*

41. The 2010 disposition and subsequent denial of reopening indicate that, if Petitioner's removal order remains administratively final, §1231 likely supplies the relevant post-order detention framework. A grant of withholding restricts removal to the protected country without necessarily eliminating the underlying removal order. *Johnson v. Guzman Chavez*, 594 U.S. 523, 534-40 (2021). That principle does not determine whether Petitioner's particular confinement is authorized. *Guzman Chavez* concerned reinstated removal orders and withholding-only proceedings; Petitioner is not alleged to have been removed, unlawfully reentered, or received a reinstated order. Respondents therefore must identify the operative order, the event establishing its finality, and the detention provision they presently invoke.

42. Section 1231 distinguishes mandatory detention during the removal period from detention after that period. The removal period ordinarily lasts ninety days and begins on the latest applicable event specified in §1231(a)(1)(B): (1) the date the order becomes administratively final; (2) if the order is judicially reviewed and a court orders a stay of removal, the date of the reviewing court's final order; or (3) if the person is detained or confined for a nonimmigration reason, the date of release from that confinement. 8 U.S.C. §1231(a)(1)(B). A later immigration arrest is not itself one of the statutory triggering events

43. Upon information and belief, the removal period associated with Petitioner's reported 2010 disposition expired long before her September 15, 2026 arrest. That allegation rests on the age of the reported order, the subsequent denial rather than grant of reopening, and the absence of any presently identified later event within §1231(a)(1)(B) commencing a new removal period. Petitioner does not allege that no such record can exist. If Respondents rely upon a later finality event, judicial stay, release from nonimmigration confinement, or other event that they contend altered the statutory calculation, their return should identify and substantiate it. The September 15, 2026 immigration arrest itself did not restart the statutory period.

44. Section 1231(a)(1)(C) extends the removal period when a person "fails or refuses to make timely application in good faith for travel or other documents necessary to" departure, or "conspires or acts to prevent" removal. 8 U.S.C. §1231(a)(1)(C). In Diouf v. Mukasey, 542 F.3d 1222, 1228-31 & n.4 (9th Cir. 2008), the court required the government to document the conduct relied upon to extend the period. Pelich v. INS, 329 F.3d 1057, 1059-61 (9th Cir. 2003), likewise involved actual noncooperation with efforts to obtain travel documents. No comparable conduct has been identified to Petitioner as a ground for present confinement.

45. Section 1231(a)(6) cannot be read to permit initial physical incarceration years after the removal period expires. The statutory framework dictates removal-period custody, supervision thereafter, and post-period detention only under narrow statutory terms. 8 U.S.C. §1231(a)(2), (3), (6). These provisions permit continuous post-period custody but do not grant unbounded authority to arrest and incarcerate an individual years later based solely on an unexecuted order.

46. Persuasive decisions have adopted this first-detention construction of §1231. In *Diallo v. Joyce*, No. 25-cv-9909, ECF No. 20, at 2-5 (S.D.N.Y. Dec. 23, 2025), the court granted relief to a withholding recipient who had not previously been detained and had no order of supervision. The amended findings and recommendations in *Mucaj v. Warden, Golden State Annex Detention Facility*, No. 1:26-cv-02467, ECF No. 24, at 5-7 (E.D. Cal. June 26, 2026), similarly addressed a first detention following years of community residence. Petitioner invokes those authorities as persuasive applications of §1231's structure, not as binding Ninth Circuit precedent. Her confirmed absence of prior physical immigration detention squarely presents the statutory issue those authorities considered.

47. Petitioner acknowledges opposing decisions such as *Lin v. Francis*, No. 25-cv-10001 (S.D.N.Y. Dec. 29, 2025), and *Piao v. Lyons*, No. 1:25-cv-01725 (E.D. Va. Oct. 31, 2025). However, proper construction requires giving effect to the distinct post-removal provisions. Moreover, *Nielsen v. Preap*, 586 U.S. 392 (2019), involved §1226(c) mandatory custody following criminal release, not §1231 post-removal-period supervision. Petitioner asserts statutory boundaries, not equitable laches.

48. Even under the broader interpretation of §1231(a)(6), an administratively final removal order does not itself establish every statutory predicate for post-period detention. Section 1231(a)(6) identifies a person who is inadmissible under §1182; removable under §1227(a)(1)(C), (a)(2), or (a)(4); or who "has been determined by the Attorney General to

be a risk to the community or unlikely to comply with the order of removal." Respondents must identify which statutory ground they contend applies and substantiate any determination the particular ground requires.

49. The arresting officers' reported description of Petitioner as an "overstay" does not itself establish one of those predicates. Section 1227(a)(1)(B) is not among the deportability provisions expressly enumerated in §1231(a)(6); §1227(a)(1)(C) is. The Court therefore cannot determine the applicable category from the officers' colloquial characterization alone. Petitioner does not contend that the charging language of an old order necessarily forecloses every later contention that she is "removable under" another provision. She contends that Respondents must identify and substantiate the statutory category they actually invoke.

50. Petitioner's lawful childhood admission forecloses treating her simply as a person who was never admitted, although it does not by itself eliminate every possible ground of inadmissibility under §1182. To the extent Respondents instead rely on §1231(a)(6)'s community-risk or noncompliance alternative, the statute applies to a person who "has been determined" to present the specified risk. No such determination has been disclosed to Petitioner. She does not infer from nondisclosure alone that none exists; she requests the contemporaneous determination, identity and authority of the decisionmaker, supporting grounds, and date.

51. The return mandated by 28 U.S.C. §2243 must detail the operative order, statutory classification, extension grounds, and any individualized findings. Production should be limited to records material to the detention authority at issue, enabling judicial review on an authentic record.

52. Where Respondents cannot establish present statutory authority for confinement, release is the appropriate habeas remedy under §§2241 and 2243; a custody hearing cannot create detention power Congress did not confer. A contemporaneous agency record produced during this litigation may establish authority that previously was undisclosed. A genuinely new lawful agency action may affect prospective custody. But neither late disclosure nor later agency action establishes that a required statutory predicate existed at an earlier time when it did not. Petitioner therefore seeks immediate release from confinement that Respondents cannot establish is presently authorized by §1231.

**COUNT II**
**Deprivation of Established Liberty Without Pre-Deprivation Process**

**In Violation of the Fifth Amendment**

53. Petitioner incorporates the facts regarding her lawful entry, protected status, deep community ties, and abrupt first arrest set forth above. Independently of Count I, she challenges the abrupt deprivation of her established liberty without notice or an opportunity to be heard.

54. Freedom from bodily restraint resides at the core of Due Process protection, which extends to all persons within the United States. *Zadvydas*, 533 U.S. at 690, 693-94. An existing removal order does not eliminate these fundamental guarantees before physical incarceration occurs.

55. Constitutional review requires balancing the private interest, the risk of erroneous deprivation, and administrative burdens. *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976). Petitioner asserts procedural protections against sudden physical arrest, not an independent right to immigration status based on equity.

56. Petitioner's interest in freedom is profound. Having entered lawfully as a child and spent two decades building her family and career as a registered nurse, her open participation in agency proceedings demonstrates continuous accountability rather than evasion.

57. This protected liberty interest stems from actual physical freedom, regardless of whether formal supervision papers were previously executed. Respondents cannot bypass constitutional limits by framing initial physical incarceration as routine enforcement.

58. Recent decisions in this District have granted habeas relief on first-detention claims that advance notice and a meaningful opportunity to contest confinement were constitutionally required on the facts presented. See *Orozco-Salazar v. Warden Desert View Facility*, No. 5:26-cv-04555-KES, ECF No. 13, at 4-10 (C.D. Cal. Aug. 25, 2026); *Hui Tang v. Mullin*, No. 5:26-cv-04881-KES, ECF No. 9, at 6-12 (C.D. Cal. Sept. 10, 2026). Those decisions are persuasive applications of *Mathews*, not binding circuit holdings establishing the same result in every first-detention case.

59. Petitioner's reported post-order posture differs from the procedural settings in those cases and strengthens the government's interest in effectuating an existing removal order. That interest is part of the *Mathews* balance; it does not eliminate the distinct question whether advance custody process was practicable and constitutionally required before DHS first transformed Petitioner's longstanding physical liberty into incarceration. The earlier

removal proceedings did not necessarily adjudicate whether physical detention was legally and factually necessary in September 2026.

60. Stripping physical freedom without articulating operative custody findings creates a severe risk of erroneous deprivation, leaving vital statutory and factual questions completely unaddressed.

61. Pre-deprivation process mitigates this danger by allowing individuals to present evidence, address custody grounds, and contest errors before an impartial decisionmaker prior to incarceration.

62. Due process required advance notice and a fair hearing before an impartial adjudicator prior to physical confinement. Summary arrest without such safeguards violates the Fifth Amendment.

63. The verbal assertions made during the airport encounter did not themselves provide the process alleged to be constitutionally required. They did not identify the statutory basis for continued confinement, disclose the evidence supporting any custody-specific determination, or provide a meaningful opportunity to contest physical detention before a neutral decisionmaker.

64. Petitioner's claim is materially different from the posture addressed in *Saravia v. Sessions*, 905 F.3d 1137, 1141-46 (9th Cir. 2018), which involved previously released minors and prompt review of asserted changed circumstances; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-14 (9th Cir. 2022), which rejected an automatic additional constitutional hearing after an existing §1226(a) custody adjudication; and *Castaneda v. Perry*, 95 F.4th 750, 759-62 (4th Cir. 2024), which involved materially different §1231 custody and prior review. Petitioner challenges her first physical detention following years of community liberty and alleges that no meaningful custody adjudication preceded that deprivation.

65. Immediate release is the correct remedy for unlawful pre-deprivation process, restoring liberty lost through constitutional default. See *Hui Tang*, ECF No. 9; *Orozco-Salazar*, ECF No. 13.

66. Prudential exhaustion is not required where no adequate administrative mechanism or appeal exists under §241.4(d). See *Laing v. Ashcroft*, 370 F.3d 994, 998-1001 (9th Cir. 2004).

**COUNT III**

**Arbitrary Civil Detention Without a Present Nonpunitive Justification In Violation of Substantive Due Process**

67. Petitioner incorporates the facts concerning her background, community life, and arrest. This count challenges the substantive justification for her physical confinement under the Fifth Amendment.

68. Civil detention must maintain a valid, nonpunitive justification. *Zadvydas*, 533 U.S. at 690-92; *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Government authority cannot convert civil enforcement into arbitrary imprisonment.

69. Petitioner asserts that the physical confinement must maintain a constitutionally adequate relationship to a legitimate present, nonpunitive purpose.

70. The reasons communicated during her arrest concerned her longstanding immigration status and the prospect of removal to another country. Those circumstances may bear upon immigration enforcement, but they do not themselves explain why physical incarceration became necessary in September 2026.

71. No newly arising danger, flight concern, obstruction, noncompliance event, or other material circumstance requiring confinement has been identified to Petitioner. Nor have Respondents disclosed a contemporaneous determination explaining why detention—rather than lawful noncustodial measures—is presently necessary.

72. The absence of identified changed circumstances is therefore material to whether Petitioner's detention remains reasonably related to a legitimate civil objective. A change in enforcement priority, without more, does not itself establish why physical incarceration of this particular person is necessary.

73. Removal feasibility may likewise affect the government's regulatory interest. An unidentified possibility of future third-country removal does not by itself establish that present incarceration bears a reasonable relationship to accomplishing removal.

74. This count is not a disguised claim that the time Petitioner spent living in the community counts toward the detention period addressed in *Zadvydas*. Her current physical detention began in September 2026. Recent C.D. Cal. orders have nevertheless treated changed circumstances and individualized custody necessity as relevant to prospective re-detention. See *Orozco-Salazar*, ECF No. 13, at 9-10; *Hui Tang*, ECF No. 9, at 11-13. In *Tang*, the court dismissed the separate substantive claim as moot after granting relief on other grounds.

75. Physical confinement that is arbitrary or no longer reasonably related to a legitimate nonpunitive regulatory objective violates substantive due process. Petitioner seeks release under §2241(c)(3).

**COUNT IV**

**Third-Country Removal Without Required Notice and a Meaningful Opportunity to Seek Protection Violates the Fifth Amendment and Governing Federal Law**

76. Petitioner incorporates all preceding factual statements. This count challenges procedures governing removal to an unannounced third country, independently of general custody validity.

77. Officers threatened third-country removal without identifying the destination, denying Petitioner written notice or opportunity to evaluate country-specific risks.

78. Upon information and belief, Respondents are pursuing third-country removal pursuant to policy directives, including the March 30, 2025 guidance and July 9, 2025 memorandum, which Petitioner challenges as applied to her.

79. The challenged policies bypass mandatory screening upon diplomatic assurances and curtail notice, depriving individuals of meaningful protection claims. See *D.V.D. v. DHS*, No. 26-1212 (1st Cir. Sept. 18, 2026).

80. Ninth Circuit precedent recognizes that a person must receive meaningful notice of a newly designated removal country and an opportunity to present protection-related objections to that destination. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999). *Ibarra-Perez v. United States*, No. 24-631, slip op. at 13-14 (9th Cir. Aug. 27, 2025), likewise recognized the destination-notice principle, although that decision arose in a Federal Tort Claims Act action following removal rather than a prospective request for habeas or injunctive relief.

81. Under *Mathews*, withholding destination notice creates an unacceptable risk of wrongful deportation to persecution or torture. See *Esmail v. Noem*, No. 2:25-cv-08325, ECF No. 14 (C.D. Cal. Sept. 26, 2025).

82. Federal protection law independently limits removal to particular destinations. Section 1231(b)(3) prohibits removal to a country where the statutory withholding standard is satisfied, and FARRA and the Convention Against Torture implementing regulations restrict removal where the governing torture standard is met. Petitioner seeks a meaningful opportunity to invoke the applicable protection procedures before removal occurs.

83. The First Circuit's September 18, 2026 decision in *D.V.D. v. Department of Homeland Security*, No. 26-1212, provides persuasive authority that the challenged third-country procedures conflict with governing statutory and regulatory protections. The First Circuit vacated the declarations concerning sequencing for lack of standing and otherwise affirmed the judgment. Petitioner invokes *D.V.D.* as persuasive authority.

84. Petitioner likewise does not contend that every third country must affirmatively accept her before removal may lawfully occur. *Jama v. ICE*, 543 U.S. 335, 341-42, 346-47 (2005). The applicable country-selection requirements depend on the particular statutory subsection Respondents invoke. Whatever lawful destination-selection authority exists, however, does not eliminate independently applicable withholding, torture-protection, or constitutionally required notice and opportunity to respond.

85. Petitioner alleges a concrete, individualized threat rather than a generalized disagreement with agency policy. During the arrest that placed her in present custody, an officer told her that she would be sent to a third country. Respondents have not identified that country. The nondisclosure is itself material because Petitioner cannot investigate country conditions or determine whether she has legally cognizable direct or onward-removal concerns without knowing the destination. Petitioner seeks destination and implementation information sufficient to establish the precise scope and imminence of the threatened action.

86. Petitioner invokes 28 U.S.C. §1331 for her federal constitutional and statutory claims. For nonmonetary relief against responsible federal officials, 5 U.S.C. §702 supplies the applicable waiver of sovereign immunity. To the extent the challenged third-country directives and their application constitute reviewable final agency action, Petitioner also invokes 5 U.S.C. §§704 and 706(2). Section 2241 independently supports her physical-custody claims; Petitioner does not contend that habeas jurisdiction over detention automatically supplies jurisdiction over every removal-related dispute.

87. The challenged directives reflect a definitive agency position concerning when officials may execute removal to a newly selected third country and what protection process will precede that action. Their implementation determines the procedure afforded to affected persons rather than merely expressing a tentative agency view. Petitioner therefore alleges that the directives constitute final agency action within the meaning of *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), to the extent Respondents apply them to her.

88. Section 1252(g) presents a substantial but not dispositive jurisdictional issue. In *Ibarra-Perez*, the Ninth Circuit distinguished a legal claim concerning the country to which the government removed the plaintiff from a challenge to the discretionary timing of execution. Slip op. at 19-24. That case, however, arose under the FTCA after removal and did not itself authorize prospective habeas relief. *Rauda v. Jennings*, 55 F.4th 773, 777-81 (9th Cir. 2022), held §1252(g) barred a district-court effort to postpone execution of an adjudicated removal order while a motion to reopen remained pending. Petitioner does not seek that relief. She challenges the later selection and use of an undisclosed destination in a manner that would prevent her from presenting destination-specific protection claims.

89. Petitioner does not ask this Court to review or vacate the underlying Immigration Court Orders, or adjudicate ultimate alternative relief. Her claim concerns a later destination-specific procedure that allegedly would foreclose meaningful presentation of those issues through the channels federal law provides. Petitioner therefore alleges that §§1252(a)(4), (a)(5), and (b)(9) do not require dismissal of this distinct procedural challenge. She recognizes that labeling a claim "procedural" does not itself overcome an otherwise applicable jurisdictional bar.

90. Section 1231(h) does not itself create a private right of action; Petitioner invokes the Constitution, §1331, and the APA as the applicable enforcement vehicles. Section 1252(f)(1) does not bar individualized relief respecting the application of the immigration statutes to this Petitioner. To the extent a requested order constitutes an injunction against execution of a final removal order within §1252(f)(2), Petitioner seeks that relief only upon the required showing that execution in the challenged manner is prohibited as a matter of law, including by clear and convincing evidence where §1252(f)(2) applies.

91. Petitioner therefore seeks individualized declaratory and injunctive relief requiring meaningful notice of the actual proposed destination, adequate time and access to counsel to investigate and present legally cognizable protection concerns, appropriate individualized consideration, notice of the resulting determination, and a practical opportunity to invoke whatever administrative or judicial review federal law makes available before physical removal.

## COUNT V
## Failure to Comply with Mandatory Custody Procedures In Violation of Federal Law

92. Petitioner incorporates the allegations concerning her reported final-order posture, first physical immigration detention, and the nondisclosure of any written custody decision. This count challenges Respondents' failure to comply with mandatory procedural requirements governing the exercise of post-removal-period custody authority. It does not allege revocation of an Order of Supervision or of a prior custodial release.

93. An agency must comply with binding procedural regulations governing the exercise of its authority. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954). In the Ninth Circuit, the significance of a regulatory violation depends in part on whether the regulation protects the affected person's interests and whether the violation prejudiced those interests. *United States v. Calderon-Medina*, 591 F.2d 529, 531-32 (9th Cir. 1979).

94. Upon information and belief, Respondents have made and are implementing a discretionary post-removal-period custody decision concerning Petitioner. That inference rests on the reported final-order history and Respondents' continuing confinement of Petitioner after her first physical immigration arrest. The identity and authority of the decisionmaker, the statutory classification used, and the contemporaneous custody record remain principally within Respondents' possession.

95. If Respondents are exercising custody authority governed by 8 C.F.R. §241.4, subsection (d) requires that "[a] copy of any decision" by the authorized official to release or detain the person be provided to the detainee, and a decision retaining custody must "briefly set forth the reasons for the continued detention." Section 241.4(d)(2) further requires service of notices, decisions, and other documents issued in connection with the custody reviews governed by that section.

96. Petitioner reports that no such custody decision has been provided to her. The officers' oral references at LAX to immigration status and a warrant did not provide a copy of a post-order custody determination, identify the official who made it, or state the custody-specific reasons required by a covered §241.4(d) decision.

97. Section 241.4(h)(4) separately requires written notice of the disposition when the field-level custody review described in subsection (h) occurs. Petitioner does not allege merely from the fact of her arrest that a particular subsection (h) review occurred, that its advance-notice provisions applied immediately, or that every scheduled-review deadline has already

expired. If Respondents contend that such a review occurred or supplies the basis for present custody, they should produce the review and written determination.

98. Failure to provide the applicable custody decision and reasons prejudices the interests those requirements protect. Without them, Petitioner cannot identify and correct an erroneous statutory classification, answer the asserted basis for continued confinement, or present evidence directed to the actual custody grounds. That uncertainty is particularly consequential where the confinement represents her first physical immigration detention after years outside custody.

99. *Gadyan v. Noem*, No. 5:25-cv-03219-RGK-JDE, ECF No. 16, at 5-8 (C.D. Cal. Dec. 18, 2025), illustrates that release may be appropriate where failure to comply with mandatory custody procedures renders continuing detention unlawful. *Gadyan* involved a materially different predicate—a petitioner previously detained and released on bond—and Petitioner does not import that release-revocation framework into this case. She relies on *Gadyan* for the remedial principle only after the particular applicable duty and violation are established.

100. Petitioner seeks release where noncompliance with an applicable mandatory requirement renders present confinement unlawful and cannot be remedied retrospectively.

**COUNT VI**
**Arrest and Resulting Custody**
**Violate Applicable Arrest Authority and Constitutional Limits**

101. Petitioner incorporates the allegations concerning her domestic arrival, arrest, and resulting physical custody set forth in paragraphs 24-29. She challenges the authority for the seizure that initiated the confinement maintained against her.

102. The underlying removal order, a warrant of removal, and an administrative arrest warrant are distinct instruments. Section 241.2(a) provides for issuance of a Form I-205 based on a final administrative removal order by an authorized official; subsection (b) identifies the authority to execute it. Petitioner does not contend that every immigration arrest requires a judicial criminal warrant or that failure to display an otherwise valid administrative warrant necessarily invalidates the arrest. The question is whether the seizure actually undertaken rested on an applicable, valid instrument or satisfied the governing warrantless-arrest authority.

103. The arresting officers told Petitioner that they possessed a warrant. They did not show the warrant to her or provide her a copy. As of the latest confirmed update pleaded above, neither Petitioner nor counsel had received or identified the instrument on which Respondents relied.

104. To the extent Respondents did not execute the arrest pursuant to a valid warrant applicable to the seizure undertaken, warrantless civil immigration authority is subject to independent statutory requirements. Under 8 U.S.C. §1357(a)(2), an officer may make a warrantless civil immigration arrest only where the officer has the requisite reason to believe both that the person is present in violation of immigration law and that the person is likely to escape before a warrant can be obtained. The implementing regulation likewise recognizes warrantless authority where the designated officer has reason to believe the person is likely to escape before a warrant can be obtained. 8 C.F.R. §287.8(c)(2)(ii).

105. The Fourth Amendment's probable-cause requirement and §1357(a)(2)'s additional statutory restrictions are distinct. *Tejeda-Mata*, 626 F.2d at 725. This count principally challenges the failure to satisfy the applicable statutory arrest prerequisites. It does not assume that every violation of an additional statutory condition independently establishes a Fourth Amendment violation, or that Petitioner's lawful original admission necessarily defeats every possible basis for a later civil immigration arrest.

106. In *Villa Cambron v. Johnson*, No. 5:26-cv-04624-KES, ECF No. 14, at 6-8 & n.2 (C.D. Cal. Sept. 1, 2026), the court granted habeas relief on warrantless-arrest grounds, reasoning that the unlawful seizure rendered the detention challenged there unauthorized. The court expressly disagreed with decisions declining release for an improper arrest, including *Jacinto Chacon v. Mullin*, No. 26-cv-03294-RAO, 2026 WL 2127177, at *3 (C.D. Cal. July 21, 2026). Petitioner acknowledges that *Villa Cambron* concerned detention during pending removal proceedings, not execution of an established final order. She relies on its present-custody reasoning only to the extent the proven defect similarly leaves her present confinement unauthorized.

107. Petitioner seeks release under §§2241(c)(3) and 2243 to the extent the apparent arrest defects render present custody unauthorized, together with such other relief as the established violation permits.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

A. Grant the Petition for Writ of Habeas Corpus and order Respondents to IMMEDIATELY RELEASE Petitioner from immigration detention;

B. Award Petitioner her reasonable attorneys' fees and costs to the extent authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable law, upon a timely and properly supported application; and

C. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: September 20, 2026

*<u>/s/ E. Katharine Tinto</u>*
E. Katharine Tinto, Esq.
California Bar #223654
401 E. Peltason Drive, Suite 3800-L
Irvine, CA 92697
Telephone: (949) 824-9247
Email: ktinto@law.uci.edu
Attorney for Petitioner Monica Ryadi

*<u>/s/ Eric Rosenfeld</u>*
Eric Rosenfeld, Esq.
Pennsylvania Attorney I.D. No. 208106
*Pro hac vice status pending*
3662 N. 21st Street
Philadelphia, PA 19140
Telephone: (215) 779-6443
Email: eric@rglegalsolutions.com

**VERIFICATION PURSUANT TO 28 U.S.C. §§2242 AND 1746**

I, Eric Rosenfeld, declare as follows:

I am an attorney admitted to practice in Pennsylvania and have been retained to represent Monica Ryadi in connection with her immigration detention and this action. I submit this verification in my own name, acting on her behalf under 28 U.S.C. § 2242.

Monica Ryadi has authorized counsel to commence and pursue this action seeking relief from her detention and protection of the rights asserted in the petition. That authorization was communicated on September 19, 2026.

I have read the foregoing Verified Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief. In preparing and reviewing its factual allegations, I have relied on my communications with Monica Ryadi during the period September 15-20; communications with her husband; and the particular records actually reviewed.

Monica Ryadi is detained at ICE Processing Center in Adalanto, California, and I am located in Pennsylvania. Her signature has not been obtainable in time for this emergency filing because there is no known document-access or signature-transmission procedure with the facility that is accessible over the weekend on an emergency basis. I therefore verify the petition on her behalf rather than delay its submission. This verification is not based on any refusal by Monica to authorize the action.

The petition's factual allegations concerning matters within my personal knowledge are true and correct. The remaining factual allegations are based on the identified communications and records, or are expressly stated upon information and belief where supported by the facts presently available. After reasonable inquiry, I believe those allegations to be true and correct. I do not claim firsthand knowledge of events I did not witness or personal access to agency records that have not been disclosed.

I make this verification on Monica's behalf for purposes of §2242. Statements of legal argument in the petition are counsel's legal contentions, rather than assertions that I personally witnessed the underlying events.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2026, at Philadelphia, Pennsylvania.

*/s/ Eric Rosenfeld*

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 11-6.2**

The undersigned, counsel of record for Petitioner, certifies that this *Petition for Writ of Habeas Corpus* contains 6,741 words, which complies with word limit of Local Rule 11-6.1.

Respectfully submitted,

Dated: September 20, 2026

*/s/ E. Katharine Tinto*
E. Katharine Tinto, Esq.
California Bar #223654
401 E. Peltason Drive, Suite 3800-L
Irvine, CA 92697
Telephone: (949) 824-9247
Email: ktinto@law.uci.edu
Attorney for Petitioner Monica Ryadi

*/s/ Eric Rosenfeld*
Eric Rosenfeld, Esq.
Pennsylvania Attorney I.D. No. 208106
*Pro hac vice status pending*
3662 N. 21st Street
Philadelphia, PA 19140
Telephone: (215) 779-6443
Email: eric@rglegalsolutions.com